IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARIA BUTTERCASE, | |
| Plaintiff, | 8:24CV283 |
| vs. | |
| STATE OF NEBRASKA, | MEMORANDUM AND ORDER |
| Defendant. | |

This matter is before the Court on the "Notice of Removal" filed by Plaintiff Maria Buttercase ("Maria"), which the Court docketed as a civil complaint filed pursuant to 42 U.S.C. § 1983 (i.e., a civil rights action), Filing No. 1, and Maria's Motion to Proceed in Forma Pauperis ("IFP"), Filing No. 2. Also before the Court are Maria's Motion for Appointment of Counsel ("Motion for Counsel"), Filing No. 3, and a Motion to Join Notice of Removal ("Motion to Join") filed by Joseph J. Buttercase ("Joseph"), Filing No. 7. Upon review of Maria's IFP Motion, the Court finds that she is financially eligible to proceed in forma pauperis. The Court now conducts a review pursuant to 28 U.S.C. § 1915(e)(2) of the Notice of Removal, which includes, for purposes of this review, the "Supplemental Notice of Removal" (hereinafter "Supplement"), Filing No. 6. For the reasons explained below, the Court lacks subject matter jurisdiction over the Notice of Removal, the matter will be remanded to state court, and the Motion for Counsel and Motion to Join will be denied as moot.

## I. BACKGROUND

Maria filed her Notice of Removal on July 16, 2024, seeking to remove ongoing proceedings "commenced . . . on or about September 11, 2023[,] and June 24, 2024," in the District Court of Otoe County, Nebraska (hereinafter

"state court"), captioned "State of Nebraska, on behalf of B[.]J[.]H,[1] Minor Child, Plaintiff, vs. Joseph J. Buttercase, Defendant, Charlotte J. Hamlin, Third-Party Defendant, Philip Buttercase, and Maria Buttercase, Intervenors." Filing No. 1 at 1. The state court proceedings arise out of an order of support entered October 19, 2012, establishing Joseph as the father of the minor child, B.H. Third-Party Defendant Charlotte J. Hamlin ("Charlotte") is the biological mother of B.H., and Intervenors Maria and Philip Buttercase (collectively "Intervenors") are B.H.'s paternal grandparents. Maria alleges that "[b]ecause of the following facts, [she] is denied in the courts of Nebraska rights secured to [her] by statutes providing for the equal rights of the United States." *Id*. at 1–2.

On August 2, 2017, the state court entered an order and parenting plan establishing grandparent visitation to Intervenors and unlimited telephone parenting time to Joseph during any such grandparent visits with Intervenors facilitating B.H.'s relationship with Joseph, who is incarcerated. *Id*. at 2. Beginning in June 2021, Charlotte repeatedly denied Intervenors their grandparent visitation and Joseph's parenting time, leading Joseph and Intervenors to seek to hold Charlotte in contempt for violating the August 2017 state court visitation order. Ultimately, on September 25, 2023, a final hearing on Joseph's second contempt action was held, despite Joseph's and Maria's requests for a continuance, and "the state court found that Joseph met his burden of proof that Charlotte was in willful contempt for only Count I of the show cause application and 'admonished' Charlotte for a sanction on this <u>second</u> contempt action." *Id*. at 6 (emphasis in original). Joseph filed a timely appeal of the state court's decision in *State obo B.H. v. Joseph B.*, No. A-23-833, which was pending at the time Maria filed her Notice of Removal. *Id*. On

---

[1] The Court will refer to the minor child involved in the state proceedings by the child's initials only.

November 5, 2024, the Nebraska Court of Appeals affirmed the state court's September 25, 2023, order on Joseph's second contempt action. *State on behalf of B.H. v. Joseph B.*, No. A-23-833, 2024 WL 4677578 (Neb. Ct. App. Nov. 5, 2024).

Maria also accuses the Guardian Ad Litem Tracy A. Burns ("GAL Burns"), who was appointed by the state court, of "unprofessional and racist behavior," Filing No. 1 at 9, based on GAL Burns' disregard of Intervenors' concerns about B.H. being abused by individuals associated with Charlotte and her inclusion of "a derogatory racial stereotype statement against Maria" in a report GAL Burns authored (hereinafter the "Report"), *Id.* at 8. In the Report, GAL Burns wrote that Maria, who is Hispanic, "[m]ay need to limit some of the homemade tacos/burritos or add more veggies to those as well," *Id.*, even though Intervenors never said anything to GAL Burns about Maria cooking "homemade tacos/burritos," *Id.* at 6–7. Additionally, on or about June 29, 2023, Intervenors called GAL Burns to report that Charlotte told B.H. to call 911 and run away for no reason during a visit on June 24, 2023, and Maria explained to GAL Burns "that from running behind [B.H.] her feet and legs hurt so bad because of her surgeries." *Id.* at 8. In response, GAL Burns "laughed at Maria," and, "[i]n retaliation for reporting Charlotte's unlawful conduct of directing [B.H.] to falsely report to law enforcement and run away from the grandparents, GAL Burns filed a motion to cancel the grandparents' and Joseph's visits beginning July 8, 2023." *Id.* at 9. Otoe County Public Defender Michael Ziskey ("Ziskey"), Charlotte's counsel, assisted GAL Burns by "draft[ing] affidavits with perjurious attachments for GAL Burns that she offered to the state court at the hearing July 24, 2023." *Id.* As a result of GAL Burns' actions, Maria and Joseph filed a motion to discharge GAL Burns on

February 26, 2024. *Id.* at 9–10, 53–57. The state court denied their motion on March 29, 2024. *Id.* at 10, 66–77.

Charlotte filed a complaint to modify on September 11, 2023, seeking to terminate Intervenors' grandparent visitation rights. *Id.* at 47–48. On May 20, 2024, Maria and Joseph filed a motion for summary judgment on Charlotte's complaint to modify, which remains pending. Joseph also filed a Complaint for Modification and Declaratory Judgment, but "the state court refused to liberally construe his pro se complaint as a 'counterclaim' forcing him to retype the entire pleading as a 'Second Amended Answer and Counterclaim,'" which he filed on June 24, 2024. *Id.* at 11, 89–98, 101.

After Maria filed her Notice of Removal in this Court and provided written notice of removal to the adverse parties, Maria alleges Judge Julie D. Smith ("Judge Smith") of the state court held a hearing even though "the state court was divested of jurisdiction" and "continued to violate Maria's federal constitutional rights by falsely accusing her son Joseph . . . and Maria of unauthorized practice of law[,] interrogating Maria whether she prepared the Notice of Removal" and ordering Maria to file the federal case number from this Court in the state court. Filing No. 6 at 2. Maria alleges, "According to Judge Smith, Mexicans do not have any equal civil rights, to include, but not limited to, representing themselves in her court." *Id.*

> Maria alleges:
>
> Due to the racial discrimination by Judge Smith, Ziskey, GAL Burns, and all persons acting in concert with them under color of state law, and each of them, it has interfered with [the] exercise and enjoyment of Maria's rights secured by the United States Constitution and other federal laws; and the Nebraska Constitution and laws of Nebraska, including, but not limited to; Maria's rights to petition the Government for a redress of grievances, to freedom of speech; to be free from abuse of authority; to due process of law; and to equal protection of the laws.

4

> Maria cannot enforce and is being denied in the state court her above mentioned state and federal constitutional rights, as guaranteed by the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983, 1985; and Article I, §§ 3, 5, and 19 of the Nebraska Constitution.

*Id.* at 3–4; *see also* Filing No. 1 at 11–12. Maria asks that the state court action "proceed in this Court as an action properly removed to it for the fair and unbiased hearing of these actions, all in the interests of fairness, justice, and equality." Filing No. 1 at 12. On August 16, 2024, Joseph filed his Motion to Join, seeking leave to join in Maria's Notice of Removal and have the state court action proceed in this Court. Filing No. 7.

## II. DISCUSSION

The Court is required to review in forma pauperis complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e). The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b). In conducting this review, the Court must determine whether subject-matter jurisdiction is proper. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Here, though the Court docketed this case as a civil rights action under 42 U.S.C. § 1983, Maria clearly seeks to remove the state court proceedings to this Court. As explained below, the Court finds this case is improperly removed because the removal is procedurally defective and the Court lacks subject matter jurisdiction over the underlying state court proceedings.

### A. Removal is Procedurally Defective

As an initial matter, Maria's attempt to remove the state court proceedings is procedurally defective as her Notice of Removal was not timely filed. "The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." 28 U.S.C. § 1446(b)(1). The actions Maria seeks to remove are Charlotte's complaint to modify and Joseph's second amended answer and counterclaim, which "commenced in the [state court] on or about September 11, 2023[,] and June 24, 2024," respectively. Filing No. 1 at 1; *see also Id.* at 47–48, 89–98. Maria filed her Notice of Removal in this Court on July 16, 2024, which is clearly more than 30 days after Maria received notice of Charlotte's complaint to modify. *See Id.* at 49–50 (summons for service of complaint to modify issued to Maria with instructions to personally serve Maria on Sept. 14, 2023).

Maria's Notice of Removal was filed within 30 days of the filing of Joseph's second amended answer and counterclaim. However, even if the Court assumes Joseph's second amended answer and counterclaim is a removable action, *but see McKinney Econ. Dev. Corp. v. McKinney Shores Properties, Inc.*, No. 4:09CV284, 2010 WL 3855553, at *2 (E.D. Tex. Aug. 27, 2010) ("As a general rule, claims introduced into an action by counterclaim, cross-claim, third-party claim, intervention or garnishment do not afford a basis for removal." (citing *Brixley v. Union Oil Co. of Cal.*, 275 F. Supp. 290 (W.D. Ark. 1967)), *report and recommendation adopted*, No. 4:09CV284, 2010 WL 3835031 (E.D. Tex. Sept. 30, 2010), Maria is not a defendant to Joseph's counterclaim, and, thus, there is no statutory basis upon which she can remove Joseph's action to federal court. Federal law authorizes the removal of some state court

6

civil actions but only by a state court *defendant or defendants*. 28 U.S.C. § 1441(a)(1) (providing for removal of state court civil actions over which federal district courts have original jurisdiction "by the defendant or the defendants"); 28 U.S.C. § 1443 (providing for removal of certain civil rights actions "by the defendant"). As Maria is not a defendant to Joseph's June 24, 2024, pleading, her attempt to remove such action is defective.

**B. Court Lacks Subject Matter Jurisdiction**

In addition to the procedural defects in Maria's Notice of Removal, the Court finds that removal is improper because the Court lacks subject matter jurisdiction over the child custody issues at the center of the underlying state court proceeding. A requirement for removal is that the federal district court have subject matter jurisdiction over the case sought to be removed. *See* 28 U.S.C. § 1441(a). It is well-settled that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *In re Burrus*, 136 U.S. 586, 593–94 (1890). With respect to such family law matters, the domestic relations exception divests the federal courts of jurisdiction over a narrow range of cases implicating domestic relations issues, such as divorce, allowance of alimony, child custody, and child support. *See Wallace v. Wallace*, 736 F.3d 764, 766 (8th Cir. 2013).

Here, the substance of the state court case Maria seeks to remove is the care and custody of the minor child, B.H., and Maria ultimately seeks to have this Court decide who should have custody of, and visitation rights with, B.H. As such, the state courts would be better equipped to handle the issues that have arisen in the course of the custody proceedings concerning B.H. *See Overman v. U.S.*, 563 F.2d 1287,1292 (8th Cir. 1977) ("There is, and ought to be, a continuing federal policy to avoid handling domestic relations cases in

federal court in the absence of important concerns of a constitutional dimension. . . . Such cases touch state law and policy in a deep and sensitive manner and as a matter of policy and comity, these local problems should be decided in state courts." (cleaned up)). Accordingly, this Court lacks subject matter jurisdiction over this proceeding, and this case should be remanded to the state court. *See* 28 U.S.C. § 1447(c) (If district court lack subject matter jurisdiction, "the case shall be remanded."); *see also Wake Cnty. Hum. Servs. v. Davis*, No. 5:12-CV-413-BO, 2012 WL 7856618, at *2 (E.D.N.C. Oct. 24, 2012), *report and recommendation adopted*, No. 5:12-CV-413-BO, 2012 WL 7856619 (E.D.N.C. Dec. 12, 2012) (remanding child custody case to state court for lack of subject matter jurisdiction under domestic relations exception); *Hickey v. Daniels*, No. 06-CV-6838 JFB WDW, 2007 WL 2028140 (E.D.N.Y. Jan. 26, 2007) (remanding removal of child custody proceeding for lack of jurisdiction pursuant to domestic relations exception).

**C. Removal Also Improper Under 28 U.S.C. § 1443(1)**

Finally, to the extent Maria seeks removal of the state court proceeding pursuant to 28 U.S.C. § 1443(1), she does not meet the requirements for removal under that statute. Section 1443 provides, in relevant part:

> Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > (1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof . . . .

28 U.S.C. § 1443.

To demonstrate that removal is proper under § 1443(1), a removal petitioner, like Maria, first "must show that [s]he relies upon a law providing

8

for equal civil rights stated in terms of racial equality." *Neal v. Wilson*, 112 F.3d 351, 355 (8th Cir. 1997). Stated differently, "it must appear that the right allegedly denied the removal petitioner arises under a federal law 'providing for specific civil rights stated in terms of racial equality.'" *Johnson v. Mississippi*, 421 U.S. 213, 219 (1975) (quoting *Georgia v. Rachel*, 384 U.S. 780, 792 (1966)). Accordingly, "[s]ection 1443 applies only to denials of specific rights of racial equality and not the whole gamut of constitutional rights." *U.S. ex rel. Sullivan v. Missouri*, 588 F.2d 579, 580 (8th Cir. 1978). Secondly, a removal petitioner must also show that she is denied or cannot enforce such rights in the state court. *Johnson*, 421 U.S. at 219–20. "This provision normally requires that the 'denial be manifest in a formal expression of state law,' such as a state legislative or constitutional provision, 'rather than a denial first made manifest in the trial of the case.'" *Id*. at 219 (internal citation omitted) (quoting *Rachel*, 384 U.S. at 799, 803). It is only in "the rare situations where it can be clearly predicted by reason of the operation of a pervasive and explicit state or federal law that those rights will be inevitably denied by the very act of bringing the defendant to trial in the state court" that removal is proper. *Id. at 220* (quoting *City of Greenwood v. Peacock*, 384 U.S. 808, 828 (1966)). As the Supreme Court explained in *Peacock*, the bar is high for civil rights removal:

> It is not enough to support removal under [section] 1443(1) to allege or show that the defendant's federal equal civil rights have been illegally and corruptly denied by state administrative officials in advance of trial, that the charges against the defendant are false, or that the defendant is unable to obtain a fair trial in a particular state court. The motives of the officers bringing the charges may be corrupt, but that does not show that the state trial court will find the defendant guilty if he is innocent, or that in any other manner the defendant will be denied or cannot enforce in the courts of the State any right under a federal law providing for equal civil rights.

9

*Peacock*, 384 U.S. at 827–28 (internal quotation omitted).

Here, Maria fails to meet the stringent requirements for removal under 28 U.S.C. § 1443(1). In her Notice of Removal and Supplement, Maria generally alleges violations of her rights to a redress of grievances, free speech, due process of law, and equal protection, and, liberally construed, she also alleges racial discrimination claims in violation of 42 U.S.C. §§ 1983 and 1985. However, Maria's allegations fail to show, as required under § 1443, that a state law prevents her from raising any federal claims in state court. While Maria claims that Judge Smith, GAL Burns, and Ziskey have exhibited racism and favoritism, Maria "does not refer to a state law authorizing the denial of rights that would 'afford[ ] an ample basis for . . . a prediction' of the violation of those rights." *Louisiana State v. Arais-Elwin*, No. CV 18-4243, 2019 WL 668627, at *4 (E.D. La. Feb. 19, 2019) (quoting *Rachel*, 384 U.S. at 800), *aff'd sub nom. Hunt v. Arias-Elwin*, 813 F. App'x 980 (5th Cir. 2020). "Nor does [s]he show the basis for an 'equally firm prediction' that [s]he cannot protect any federal rights in state court," either in the trial court or through the state appellate process. *Green v. Green*, No. 13-CV-332 SRN/LIB, 2013 WL 5503722, at *3 (D. Minn. Oct. 3, 2013), *aff'd*, No. 13-3547 (8th Cir. Jan. 23, 2014) (finding removal petitioner's allegations of "his rights . . . to be free 'from racial discrimination,' 'to enforce contracts with the same freedom as enjoyed by similarly white citizens,' and to have 'due process of law and equal protection of the laws'" insufficient to support removal of child support proceedings under 28 U.S.C. § 1443(1)). In sum, Maria does not allege a proper basis for removal under 28 U.S.C. § 1443(1).

### III. CONCLUSION

Maria cannot remove the child custody proceedings regarding her granddaughter to this Court as her Notice of Removal is procedurally defective,

28 U.S.C. § 1443(1) does not provide a proper basis for removal of the state court proceeding, and this Court lacks subject matter jurisdiction over the underlying state court child custody proceeding. Accordingly, the Court will remand this matter back to the state court and the pending Motion for Counsel and Motion to Join are denied as moot.

IT IS THEREFORE ORDERED that:

1. Maria Buttercase's IFP Motion, Filing No. 2, is granted, and the Notice of Removal shall be filed without payment of fees.

2. Maria Buttercase's request to remove the state court civil action to this Court is denied, and the case is remanded to the District Court of Otoe County, Nebraska.

3. The pending Motion for Counsel, Filing No. 3, and Motion to Join, Filing No. 7, are denied as moot.

4. Judgment shall be entered by separate document, and the Clerk of the Court shall close this file for statistical purposes.

5. The Clerk of the Court shall send a certified copy of this Memorandum and Order and of the Judgment to the Clerk of the District Court of Otoe County, Nebraska.

6. The Clerk of the Court is further directed to send copies of this Memorandum and Order and of the Judgment to Joseph J. Buttercase.

Dated this 20th day of February, 2025.

BY THE COURT:

*John M. Gerrard*

John M. Gerrard
Senior United States District Judge